UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EZEQUIEL ROMO,<br><br>    Petitioner,<br><br>    v.<br><br>G. LEWIS, Warden,<br><br>    Respondent.<br>_____/ | No. C 13-5341 EMC (pr)<br><br>**ORDER OF DISMISSAL WITH LEAVE TO AMEND** |

## I.   INTRODUCTION

Ezequiel Romo, an inmate at Pelican Bay State Prison, filed this *pro se* action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. His petition is now before the Court for review pursuant to 28 U.S.C. §2243 and Rule 4 of the Rules Governing Section 2254 Cases In The United States District Courts.

## II.   BACKGROUND

Petitioner alleges that he is in custody serving an eight-year sentence following a conviction in 2007 for assault with a deadly weapon by a prisoner. In this action, he challenges the execution of his sentence. His petition is far from a model of clarity, but appears to contend that (1) the proceedings in 2011-2012 that resulted in his continued retention in the security housing unit ("SHU") violated his constitutional rights; (2) there was no meaningful review of his administrative appeal regarding his detention in the SHU; and (3) the application of California Penal Code § 2933.6, as amended effective January 25, 2010, to calculate his time credits violated his right to be free from ex post facto laws.

Mr. Romo alleges that he filed petitions for writ of habeas corpus in the California courts raising the same issues as raised in this petition. The California Supreme Court denied his petition on August 21, 2013. Petitioner then filed this action.

## II. DISCUSSION

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A district court considering an application for a writ of habeas corpus shall "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243. Summary dismissal is appropriate only where the allegations in the petition are vague or conclusory, palpably incredible, or patently frivolous or false. *See Hendricks v. Vasquez*, 908 F.2d 490, 491 (9th Cir. 1990).

A. The 2011-2012 Proceedings That Resulted In Petitioner's Retention In The SHU

The first claim in the petition pertains to Mr. Romo's housing in the security housing unit ("SHU") as a validated gang associate or member.[1] The main problem with petition is that it is unclear as to exactly what proceedings took place in 2011-2012 with regard to Mr. Romo's gang validation. At various places, the petition suggests it was periodic review, a gang inactivity review, and (most confusingly) a re-validation. These are different proceedings for which different procedural protections are required, as discussed later in this order. Adding to the confusion are Mr. Romo's legal arguments that often are based on misunderstandings of the relevant law. The Court will dismiss the petition with leave to amend, so that Mr. Romo can more clearly describe what the 2011-2012 proceedings were and identify which of his federal due process rights were violated in the course of those proceedings.

---

[1] The gang validation and SHU placement decisions are closely related. "'[O]nce [prison officials] determine[] that an inmate is a member or associate of a prison gang, the inmate is routinely transferred to administrative segregation'" in the SHU. *Castro v. Terhune*, 712 F.3d 1304, 1308 (9th Cir. 2013) (quoting *Madrid v. Gomez*, 889 F. Supp. 1146, 1241 (N.D. Cal. 1995)) (brackets in source).

2

The procedural protections constitutionally required depend on the nature of the proceedings that took place in 2011-2012, i.e., whether it was Petitioner's initial validation and placement in the SHU,[2] a periodic review of his placement in the SHU, or a review for potential release back to the general population based on the lack of gang activity.[3]  The process due at each step is discussed below, with the sole consideration being the procedural protections required by the federal constitution, because the only claims that can be entertained in a federal habeas action are claims for violations of the Constitution, laws or treaties of the United States.  *See* 28 U.S.C. § 2254(a).  Any failure of prison officials to comply with state law or state regulations does not matter for purposes of federal habeas relief.

1.    Initial Validation And Placement In the SHU

Interests that are procedurally protected by the Due Process Clause may arise from two sources: the Due Process Clause itself and laws of the states.  *See Meachum v. Fano*, 427 U.S. 215, 223-27 (1976).  In the prison context, these interests are generally ones pertaining to liberty. Changes in conditions so severe as to affect the sentence imposed in an unexpected manner implicate the Due Process Clause itself, whether or not they are authorized by state law.  *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (citing *Vitek v. Jones*, 445 U.S. 480, 493 (1980) (transfer to mental hospital), and *Washington v. Harper*, 494 U.S. 210, 221-22 (1990) (involuntary administration of psychotropic drugs)).  Deprivations that are less severe or more closely related to the expected terms of confinement may also amount to deprivations of a procedurally protected liberty interest, provided that the liberty interest in question is one of "real substance."  *See Sandin*,

---

[2] It seems unlikely that the proceedings were his initial validation and SHU placement proceedings, in light of his other allegations that he was first validated as a gang associate in 2005. *See* Docket # 1 at 10 and 14.

[3] The Court does not read the petition to be a challenge to the 2005 validation proceedings. If Mr. Romo wishes to challenge those proceedings, he may file a separate petition for writ of habeas corpus, after he exhausts his state court remedies for any claim in such a petition.  Mr. Romo is cautioned that it may be too late to file such a challenge because 28 U.S.C. § 2244(d) imposes a one-year statute of limitations for any petition for writ of habeas corpus from a state prisoner. In general, for prisoners challenging administrative decisions such as the placement in the SHU, § 2244(d)(1)(D) applies and the one-year limitations period begins to run on the date the administrative decision becomes final. *See Shelby v. Bartlett*, 391 F.3d 1061, 1066 (9th Cir. 2004).

515 U.S. at 477-87.[4] An interest of "real substance" will generally be limited to freedom from restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or "will inevitably affect the duration of [a] sentence." *Id.* at 484, 487. In determining whether a restraint is an "atypical and significant hardship," the court considers whether challenged condition mirrored the conditions imposed on inmates in administrative segregation and protective custody, the duration of the condition and degree of restraint imposed, and whether the discipline will invariably affect the duration of the inmate's sentence. *See Chappell v. Mandeville*, 706 F.3d 1052, 1064-65 (9th Cir. 2013). For present purposes, the Court will assume that being placed in the harsh environment of the SHU for an indeterminate term – which may last for the entirety of an inmate's sentence – imposes an atypical and significant hardship in relation to the ordinary incidents of prison life and therefore triggers the inmate's federal right to due process.

An inmate has the greatest procedural rights when he is initially validated as a gang member and placed in the SHU. When prison officials initially determine whether an inmate is to be segregated for administrative reasons and a liberty interest of real substance is implicated, due process requires that they hold an informal nonadversary hearing within a reasonable time after the inmate is segregated, inform the inmate of the charges against him or the reasons segregation is being considered, and allow the inmate to present his views. *See Wilkinson v. Austin*, 545 U.S. 209, 228-29 (2005); *Hewitt v. Helms*, 459 U.S. 460, 472 (1983); *see also Toussaint v. McCarthy*, 801

---

[4] There is some uncertainty as to whether, in addition to a liberty interest of real substance, there also must be state statutes or regulations that narrowly restrict the power of prison officials to impose the deprivation in order for a procedurally protected liberty interest to be found. *Compare Sandin*, 515 U.S. at 483-84 ("we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause"), *and id.* at 486 ("We hold that Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest") *with Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) ("After *Sandin*, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life'"). Almost twenty years after *Sandin* was decided, the uncertainty continues. *Compare Chappell v. Mandeville*, 706 F.3d 1052, 1063-64 (9th Cir. 2013) (focus should be only on the atypical and significant hardship test) *with id.* at 1065-66 (concurring opinion) (majority improperly reads *Sandin* to find a state-created liberty interest based only on the existence of an atypical and significant hardship and without the need for the state to actually create a liberty interest).

F.2d 1080, 1100 (9th Cir. 1986). Due process also requires that there be an evidentiary basis for the prison officials' decision. *See Superintendent v. Hill*, 472 U.S. 445, 455 (1985).

### 2. Periodic Reviews

Once an inmate has been placed in administrative segregation, due process requires that prison officials engage in some sort of periodic review of the inmate's confinement in administrative segregation. *See Hewitt*, 459 U.S. at 477 n.9; *Toussaint v. McCarthy*, 801 F.2d at 1101. Lower courts have found that those periodic reviews must be more than "meaningless gestures" to satisfy due process. *Toussaint v. Rowland*, 711 F. Supp. 536, 540 n.11 (N.D. Cal. 1989) (citing *Toussaint v. McCarthy*, 801 F.2d at 1102). The "meaningless gesture" phrase was drawn from this statement from the Ninth Circuit: "Since administrative segregation must not be a pretext for punitive isolation, *Hewitt*, 459 U.S. at 477 n. 9, 103 S. Ct. at 874 n.9, the substantive criteria assure that plaintiffs' due process rights are not meaningless gestures." *Toussaint v. McCarthy*, 801 F.2d at 1102. *Hewitt* makes clear that the constitutionally required periodic review is modest in scope:

> This review will not necessarily require that prison officials permit the submission of any additional evidence or statements. The decision whether a prisoner remains a security risk will be based on facts relating to a particular prisoner--which will have been ascertained when determining to confine the inmate to administrative segregation--and on the officials' general knowledge of prison conditions and tensions, which are singularly unsuited for "proof" in any highly structured manner. Likewise, the decision to continue confinement of an inmate pending investigation of misconduct charges depends upon circumstances that prison officials will be well aware of-most typically, the progress of the investigation. In both situations, the ongoing task of operating the institution will require the prison officials to consider a wide range of administrative considerations.

*Hewitt*, 459 U.S. at 477 n.9; *cf. Wilkinson v. Austin*, 545 U.S. at 217, 224 (upholding ad-seg placement policy that called for 30-day review of file and annual reviews at which inmate was allowed to appear and present his views).

### 3. Gang Inactivity Review

After an inmate has been in the SHU for about six years following his gang validation, that same inmate also may be eligible for a review of his case to determine whether he should be released from the SHU due to prolonged inactivity in the gang. (This gang inactivity review is in addition to the periodic reviews mentioned in the preceding section.) The regulations permit, but do not

1  require, the review of the active/inactive status of an inmate and permit, but do not require, the
2  release from the SHU of an inmate determined to be an inactive gang member or associate. "As
3  provided at section 3378(e), the Departmental Review Board (DRB) *may* authorize SHU release for
4  prison gang members or associates categorized as inactive. The term inactive means that the inmate
5  has not been involved in gang activity for a minimum of six (6) years. . . . The DRB *is authorized to*
6  *retain an inactive gang member or associate in a SHU* based on the inmate's past or present level of
7  influence in the gang, history of misconduct, history of criminal activity, or other factors indicating
8  that the inmate poses a threat to other inmates or institutional security." 15 Cal. Code Regs. §
9  3341.5(c)(5) (emphasis added). Section 3378(e), in turn, provides: "An inmate housed in a security
10 housing unit (SHU) as a gang member or associate may be considered for review of inactive status
11 by the Department Review Board when the inmate has not been identified as having been involved
12 in gang activity for a minimum of six (6) years."

13       The Supreme Court has never addressed this gang inactivity review process, and therefore
14 has never held that inmates have any constitutionally protected rights in connection with it.[5] Mr.
15 Romo did not have a constitutionally protected liberty interest in having prison officials comply with
16 the state regulations regarding gang inactivity reviews, at least where, as discussed below, those
17 regulations are permissive and not mandatory. Where the conditions of confinement did not change
18 at all – here, for example, it appears that Mr. Romo was in the SHU before, during and after prison
19 officials' inactivity review – there was no imposition of a new restraint that imposed an atypical and
20 significant hardship on the inmate in relation to the ordinary incidents of prison life. Any claim that
21 the procedural protections were insufficient in an inactivity review therefore would fail on the first
22 prong of *Sandin* because the inmate would not have been deprived of an interest of real substance.
23 And, if the due process analysis has two prongs after *Sandin* – see footnote 4 – the claim would fail
24 also on the second prong because the applicable regulations are discretionary in nature in that they

---

[5] The periodic review discussed in section A.2 is not the same thing as the gang inactivity review. The periodic reviews of SHU placement occur regardless of whether an inmate is under consideration for release as an inactive gang affiliate. The periodic reviews are done by the Institutional Classification Committee, rather than the DRB. *See* 15 Cal. Code Regs. § 3341.5(c)(2)(A). The DRB's activities are not the periodic review required for inmates placed in the SHU indefinitely.

1 permit, but do not require, the review of the active/inactive status of an inmate and permit, but do
2 not require, the release from the SHU of an inmate determined to be an inactive gang member or
3 associate. In short, an inmate cannot obtain federal habeas relief for any procedural infirmity in the
4 inactivity review process.

      4. "Re-Validation"

Mr. Romo occasionally refers to the proceedings in 2011-2012 as "re-validation" proceedings. It is unclear what he means by that phrase. If an inmate has never been validated, the initial event would be a validation, rather than a re-validation, of the inmate. If the inmate has been validated and that validation decision has been set aside with directions to consider the matter again, the new proceedings apparently could be referred to as a "re-validation" but the procedural protections due would be the same as for the initial validation and placement in the SHU. If, however, the inmate has been validated and placed in the SHU, there does not appear to be any requirement that he be "re-validated" to be kept there.

Mr. Romo suggests that he was re-validated because his 2005 validation expired. That does not appear to be consistent with the procedures described in the regulations and cases that describe the placement in the SHU following a gang validation as an indefinite placement. *See, e.g.,* 15 Cal. Code Regs. § 3341.5(c)(2)(A) ("a validated prison gang member or associate is deemed to be a severe threat to the safety of others or the security of the institution and will be placed in a SHU for an indeterminate term"); *Griffin v. Gomez*, No. 09-16744, slip op. at 6-7 (9th Cir. Jan. 28, 2014) (describing validation and review process in California prison system).

In his amended petition, Mr. Romo must clearly state exactly what proceedings were held in 2011-2012. He also must clearly identify the procedural protections described above that he was entitled to, but did not receive, during those proceedings. If he wishes, he may attach any documentation he has that might help the Court to understand the nature of the proceedings in 2011-2012.

///
///
///

7

### B. Alleged Lack of Meaningful Review of Mr. Romo's Administrative Appeal

Mr. Romo contends that he was denied a meaningful review of his administrative appeal regarding his placement in that, among other things, prison officials did not follow timelines set for appeals and did not find in his favor.

There is no federal constitutional right to a prison administrative appeal or grievance system for California inmates. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). The denial of an inmate appeal is not so severe a change in condition as to implicate the Due Process Clause itself and the State of California has not created a protected interest in an administrative appeal system in its prison. California's regulations grant prisoners a purely procedural right: the right to have a prison appeal. *See* Cal. Code Regs. tit 15, §§ 3084 *et seq*. A provision that merely provides procedural requirements, even if mandatory, cannot form the basis of a constitutionally cognizable liberty interest. *See Smith v. Noonan*, 992 F.2d 987, 989 (9th Cir. 1993); *see also Antonelli*, 81 F.3d at 1430 (prison grievance procedure is procedural right that does not give rise to protected liberty interest requiring procedural protections of Due Process Clause). Mr. Romo had no federal constitutional right to a properly functioning appeal system where the initial adjudication process satisfies due process. Therefore, an incorrect decision on an administrative appeal or failure to process the appeal in a particular way did not amount to a violation of his right to due process. The second claim in the petition is DISMISSED.

Romo also contends that the proceedings in 2011-2012 violated his First Amendment rights. No First Amendment violation is apparent from the facts alleged in the petition.

### C. Ex Post Facto Claim Regarding California Penal Code § 2933.6

Mr. Romo claims that the application of the amended version of California Penal Code § 2933.6 violated his right to be free of ex post facto laws because it caused his release date to be extended beyond that which it would have been under the law as it existed when his criminal offense took place. The Ex Post Facto Clause, U.S. Const., Art. I, § 10, cl. 1, forbids the states from statutorily cancelling time credits and making ineligible for early release any inmate who was previously eligible. *See Lynce v. Mathis*, 519 U.S. 433, 446-49 (1997) (retroactive cancellation of

prison credits had impermissible effect of lengthening period of incarceration in violation of Ex Post Facto Clause). Liberally construed, the petition states a cognizable claim for a violation of the Ex Post Facto Clause.

### III. CONCLUSION

For the foregoing reasons, Claim 1 must be amended, Claim 2 is dismissed, and Claim 3 states a cognizable claim for habeas relief. The petition is dismissed with leave to file an amended petition no later than **February 28, 2014**. The amended petition should have the case caption and case number for this case written on the first page and should be clearly marked "Amended Petition." Failure to file the amended petition by the deadline may result in the dismissal of Claim 1.

IT IS SO ORDERED.

Dated: February 7, 2014

_____
EDWARD M. CHEN
United States District Judge